<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

JASON P. BROWN,             : 
                            :   Civil Action No. 08-5461 (NLH)
          Plaintiff,   :
                            :
          v.             :   **OPINION**
                            :
J. POTTER, et al.,       :
                            :
          Defendants.  :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Jason P. Brown
F.C.I. Fairton
P.O. Box 420
Fairton, New Jersey 08320

**HILLMAN**, District Judge

    Plaintiff Jason P. Brown, a prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to the Federal Tort Claims Act and <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or
malicious, for failure to state a claim upon which relief may be
granted, or because it seeks monetary relief from a defendant who
is immune from such relief.

I.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time,
certain in forma pauperis and prisoner actions that are
frivolous, malicious, fail to state a claim, or seek monetary
relief from a defendant who is immune from such relief.  See 28
U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C.
§ 1915A (actions in which prisoner seeks redress from a
governmental defendant); 42 U.S.C. § 1997e (prisoner actions
brought with respect to prison conditions).

Moreover, no action may be brought by a prisoner with
respect to prison conditions unless the prisoner has exhausted
available administrative remedies.  42 U.S.C. § 1997e(a).
Specifically, 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any
> other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

"[T]he ... exhaustion requirement applies to all inmate suits
about prison life, whether they involve general circumstances or
particular episodes, and whether they allege excessive force or

2

some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002)
(citation omitted).  Although failure to exhaust is an
affirmative defense which must be pled by the defendant, a
district court has inherent power to dismiss a complaint which
facially violates this bar to suit.  <u>See</u> <u>Ray v. Kertes</u>, 285 F.3d
287, 293 n.5 (3d Cir. 2002); <u>Nyhuis v. Reno</u>, 204 F.3d 65 (3d Cir.
2000).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United
States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff."  <u>Morse v. Lower
Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to
"suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d
218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;
the statement need only 'give the defendant fair notice of what
the ... claim is and the grounds upon which it rests.'" <u>Erickson
v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106

> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted).  See also Morse v. Lower Merion School

Dist., 132 F.3d at 906 (a court need not credit a pro se

plaintiff's "bald assertions" or "legal conclusions").

In addition, a complaint must comply with the Federal Rules

of Civil Procedure.  Rule 8(a)(2) requires that a complaint

contain "a short and plain statement of the claim showing that

the pleader is entitled to relief."  Rule 10(b) provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in

pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>         (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; and
>         (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252

Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th

Cir. 2007).

4

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

## II.  BACKGROUND

Plaintiff has submitted a form civil rights Complaint for use by a prisoner.  Instead of responding to the questions directing the plaintiff to state the facts of his claim and to explain how each named defendant is involved in the case, Plaintiff here has directed the reader to approximately 30 pages of attachments, consisting of documents related to his administrative appeals of a disciplinary proceeding and his submission of an administrative tort claim.  As relief, he asks that a civil action against the defendants be permitted to proceed.  He further asks for injunctive relief in the form of an order directing (1) that he remain confined at FCI Fairton and (2) that the defendants be enjoined from taking any retaliatory action against him.[1]

---

[1] Plaintiff has failed to set forth any facts suggesting a danger of retaliation from the named Defendants.  Thus, Plaintiff lacks standing to bring this claim for prospective injunctive

From the attachments, it can be gleaned that Plaintiff submitted a urine sample for testing on or about June 24, 2007, which, according to Plaintiff, initially tested negative for banned substances.  The sample was then sent to National Toxicology for further analysis.  On June 28, 2007, prison officials received documentation from National Toxicology that the sample had tested positive for THC.  On that same day, Plaintiff was placed in the Special Housing Unit pending investigation of the urinalysis report.  On July 3, 2007, Plaintiff was charged with a disciplinary violation, Code No. 112, "Use of any narcotic, marijuana, drugs, or related paraphernalia not prescribed for the individual by medical staff."  The Unit Disciplinary Committee referred the matter to the Disciplinary Hearing Officer ("DHO") for a hearing.

The DHO hearing took place on August 8, 2007, before DHO J. Potter.  Plaintiff had requested a staff representative, Unit Manager J. Pecoraio, who appeared at the hearing, and two

---

relief.  He cannot show that he faces a real and immediate threat of future injury arising out of the challenged conduct.  See, e.g., City of Los Angeles v. Lyons, 461 U.S. 95 (1983); Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987).

Moreover, Plaintiff has no statutory or constitutional right to remain housed at FCI Fairton pending the conclusion of this litigation.  See, e.g., Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt v. Helms, 459 U.S. 460, 466-67 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976).  Accordingly, these requests for injunctive relief will be denied.

witnesses, both of whom appeared.  The DHO Report acknowledges a delay between the time Plaintiff provided the urine sample and the time of the incident report, due to the time for laboratory testing of the sample.  The DHO Report indicates that Officers Zorn and Perez advised Plaintiff of his right to appear, but that Plaintiff refused.  Plaintiff disputes the allegation that he refused to appear.

The DHO considered a written statement from the reporting staff member (including the results of his review of Plaintiff's medical records), the chain of custody documentation for the urine sample, the lab report, and the written statement of the Chief Pharmacist verifying that Plaintiff's medical records had been reviewed and that no medication had been prescribed that would have resulted in a positive urine test for THC.  The DHO also considered Plaintiff's statement to the UDC that the sample had tested clean in the preliminary testing done at the institution.  Finally, the DHO considered statements provided by the two witnesses requested by Plaintiff.

Based on all the evidence, the DHO concluded that Plaintiff had committed the charged prohibited act.  Sanctions imposed included disallowance of 41 days good conduct time, forfeiture of 27 days non-vested good conduct time, 60 days disciplinary segregation, 2 years loss of visitation privileges, and 2 years following of immediate family visits only.

Plaintiff pursued his administrative remedies, challenging the hearing results, _inter_ _alia_, on the grounds that he had not refused to appear at the hearing, but that he had asked for a postponement until his staff representative could obtain a statement from Lt. Friday, who was not then available.  This claim was rejected because the staff representative and the two requested witnesses were available and appeared, and the DHO considered the probity of the evidence sought from the third witness in his absence.[2]  The decision of the Regional Director stated that, "None of the reasons you offered for delaying the hearing were valid.  Therefore, the DHO reasonably concluded you refused to attend the hearing."  Plaintiff's final level of administrative appeal resulted in a denial on April 1, 2008.  The Administrator for National Inmate Appeals found that there was substantial compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units, that Plaintiff's due process rights were not violated, and that the DHO's decision was

---

[2] Specifically, the third witness was Lt. Friday, who had performed the initial test on the urine sample at the institution.  Plaintiff alleged that Lt. Friday could testify that the preliminary test, at the institution, came back negative.  With respect to this proffered evidence, the DHO noted that the preliminary test provides staff with a preliminary reading at the time the sample is taken, that is utilized to determine if the sample should be sent for follow-up laboratory screening.  The DHO noted that Plaintiff's sample was sent for laboratory testing and that it tested positive for THC metabolite.

supported by the greater weight of the evidence as detailed in the DHO Report.

On May 30, 2008, Plaintiff submitted a claim under the Federal Tort Claims Act, seeking $95 million in damages.  In that FTCA claim, Plaintiff alleged that Officer Zorn misrepresented to the hearing officer that he, Officer Zorn, had advised Plaintiff of his rights to appear at the hearing and that Plaintiff had refused to appear.  Plaintiff alleged that he told Officer Zorn that he wanted a postponement so that a statement could be obtained from the third witness who was not then available.  In that FTCA claim, Plaintiff characterized his claims as claims for violations of his constitutional rights to due process and to be free from cruel and unusual punishments.  The FTCA claim was rejected because Plaintiff failed to describe what actual injuries or health problems he incurred and because the claim contained allegations of constitutional violations which are not actionable under the FTCA.  Plaintiff requested reconsideration of the denial of his FTCA claim, asserting that he had endured stress and tension as a result of the described events, including the 35-day delay in the hearing, and that the health department had prescribed medication as a result of his stress.  The FTCA claim was again denied.

This Complaint followed.  Plaintiff has named as defendants Officer Perez, Officer Zorn, Disciplinary Hearing Officer J.

Potter, and Unit Manager J. Pecoraio (his staff representative at the DHO hearing).

### III.  <u>ANALYSIS</u>

The Complaint fails to comply with the requirements of the Federal Rules of Civil Procedure, Rules 8 and 20.  From the construction of the Complaint, as merely copies of documents related to a series of administrative remedies, it is not possible to determine with any certainty what claims Plaintiff seeks to assert or what relief he seeks.  For that reason alone, the Complaint is subject to dismissal without prejudice.

To the extent Plaintiff seeks to challenge the results of the disciplinary hearing, which resulted in loss of good time credits, any claim for damages is premature until such time as the results of the disciplinary proceeding are invalidated through habeas corpus or otherwise.  <u>See</u>, <u>e.g.</u>, <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973); <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994); <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997).  To the extent Plaintiff seeks a judgment that invalidates the results of the disciplinary hearing, that claim must be brought in habeas, because it is a challenge to the length of Plaintiff's confinement.  Accordingly, any challenge to the disciplinary proceeding must be dismissed without prejudice.

10

To the extent Plaintiff seeks damages as a result of his placement in administrative segregation during the investigation of the alleged violation, the Complaint fails to state a claim.

The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, Plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government).

With very limited exceptions, the Federal Employees Liability Reform and Tort Compensation Act ("Liability Reform Act"), 28 U.S.C. § 2679, immunizes federal employees from liability if they commit negligent or wrongful acts or omissions while acting within the scope of their office or employment. This general rule that federal officers are not liable for conduct arising within the scope of their employment "does not extend or apply to a civil action against an employee of the Government--(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such

11

action against an individual is otherwise authorized." 28 U.S.C.
§ 2679(b)(2). This immunity applies even where federal law does
not otherwise provide a remedy against the United States. See
U.S. v. Smith, 499 U.S. 160, 166 (1991).

Thus, for most such claims, the exclusive remedy is an
action against the United States,[3] itself, under the Federal Tort
Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., which represents
a limited waiver of the sovereign immunity of the United States.
28 U.S.C. § 2679(b)(1). The Federal Tort Claims Act gives a
district court exclusive jurisdiction over civil actions:

> [1] against the United States, [2] for money damages,
> ... [3] for injury or loss of property, ... [4] caused
> by the negligent or wrongful act or omission of any
> employee of the Government [5] while acting within the
> scope of his office or employment, [6] under
> circumstances where the United States, if a private
> person, would be liable to the claimant in accordance
> with the law of the place where the act or omission
> occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995)
(quoting 28 U.S.C. § 1346(b)); see also Federal Deposit Ins.
Corp. v. Meyer, 510 U.S. 471, 477 (1994); United States v. Muniz,
374 U.S. 150 (1963).

Taking these provisions into account, Plaintiff can proceed
against the individual Defendants here only if (1) one of the
exceptions to individual immunity contained in § 2679(b)(2)

---

[3] Upon certification by the Attorney General that an
employee was acting within the scope of employment, the United
States is substituted as a defendant. 28 U.S.C. § 2679(d)(1).

12

applies or (2) the claim is otherwise valid against the United States pursuant to the Federal Tort Claims Act.

The exception under § 2679(b)(2)(A) for claims arising directly under the Constitution relates to claims permitted by Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). In Bivens, the Supreme Court held that a violation of the Fourth Amendment prohibition against unreasonable searches and seizures by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228 (1979).

The Court of Appeals for the Third Circuit has implied a Bivens-type remedy under the First Amendment to redress alleged retaliation by prison officials against a prisoner who had exercised his right of access to the courts by initiating a civil rights action against prison officials.  See Milhouse v. Carlson, 652 F.2d 371 (3d Cir. 1981).  Relying upon Bivens, several lower federal courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or unconstitutional conditions of

13

confinement.  See, e.g., Lyons v. U.S. Marshals, 840 F.2d 202 (3d Cir. 1988); Iqbal v. Hasty, 490 F.2d 143 (2d Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3349 (Dec. 17, 2007) (No. 07-0827); Magluta v. Samples, 375 F.3d 1269 (11th Cir. 2004); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation."  Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988)).

The Supreme Court has not addressed whether supervisors in Bivens actions may be held liable on a theory of respondeat superior.[4]  Most courts to address the issue, however, have held that liability may not be based on respondeat superior.  See, e.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)(collecting cases); Laswell v. Brown, 683 F.2d 261, 268 & n.11 (8th Cir. 1982), cert. denied, 459 U.S. 1210 (1983) (basing its conclusion on the fact that the Supreme Court has looked to § 1983 cases in evaluating the nature of defendant officials' qualified immunity); Kite v. Kelly, 546 F.2d 334, 337-38 (10th

---

[4] It is not clear whether there is any supervisory relationship among the named defendants, e.g., Officers Zorn and Perez, or whether Plaintiff seeks to impose any liability under a theory of vicarious liability.

Cir. 1976).  See also Parker v. U.S., 197 Fed.Appx. 171, 173 n.1
(3d Cir. 2006) (not precedential); Balter v. U.S., 172 Fed.Appx.
401, 403 (3d Cir. 2006) (not precedential).  This Court finds
persuasive the reasoning of those courts that have declined to
impose respondeat superior liability in Bivens actions.

    Here, Plaintiff has failed to allege any conduct by the
individual defendants, named or unnamed, that would give rise to
a damages remedy under any of the traditionally-recognized
Bivens-type actions.  To the extent such a damages remedy could
be implied, for deprivation of liberty without due process, based
upon Plaintiff's confinement in administrative segregation during
the investigation period, the Complaint fails to state a claim.

    A liberty interest protected by the Due Process Clause may
arise from either of two sources:  the Due Process Clause itself
or State or Federal law.  See Hewitt v. Helms, 459 U.S. 460, 466
(1983); Asquith v. Department of Corrections, 186 F.3d 407, 409
(3d Cir. 1999).

    With respect to convicted and sentenced prisoners, "[a]s
long as the conditions or degree of confinement to which the
prisoner is subjected is within the sentence imposed upon him and
is not otherwise violative of the Constitution, the Due Process
Clause does not in itself subject an inmate's treatment by prison
authorities to judicial oversight."  Montanye v. Haymes, 427 U.S.
236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v.

15

<u>Conner</u>, 515 U.S. 472, 480 (1995).  <u>Cf.</u> <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); <u>Vitek v. Jones</u>, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."  <u>Sandin</u>, 515 U.S. at 485 (upholding prisoner's sentence of 30 days' disciplinary segregation following a hearing at which he was not permitted to produce witnesses).  <u>See also</u> <u>Asquith</u>, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and

16

significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id.

Plaintiff has alleged no facts that would suggest his confinement in administrative segregation during the investigation period subjected him to "atypical and significant hardship." The Complaint fails to state a claim for deprivation

of liberty without due process based upon Plaintiff's confinement in administrative segregation.

Nor does the exception under § 2679(b)(2)(B) for "violation of a statute of the United States under which such action against an individual is otherwise authorized" apply in the circumstances of this case.  Thus, Plaintiff has failed to state a claim against any of the individual defendants under an exception to the Liability Reform Act.

That leaves the Federal Tort Claims Act as Plaintiff's sole potential remedy with respect to the claims asserted against the individual defendants in their official capacities.  The FTCA requires the commission of a tort to impose liability.  Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992) ("While the FTCA waives sovereign immunity for actions alleging torts by employees of the Government, it does not create novel causes of action.  Thus, the mere allegation of a breach of duty under Federal law does not, by itself, state a valid tort claim against the Government.").  The facts alleged by Plaintiff do not suggest to the Court that, by temporarily confining him in administrative segregation, any of the named defendants committed a tort against Plaintiff that would give rise to liability under the FTCA.[5]

_____

[5] To the extent Plaintiff seeks to impose liability based upon an alleged misrepresentation, by Officer Zorn or Perez, that he refused to attend the hearing, the claim also fails.  The

18

Moreover, the FTCA waiver of sovereign immunity is subject to the "discretionary function exception," which provides that no liability shall lie for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Determination of whether the discretionary function exception applies depends upon the application of a two-part test.  First the court must determine whether the challenged conduct "involved an element of judgment or choice."  United States v. Gaubert, 499 U.S. 315, 322 (1991).  Second, if the conduct involved judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." focusing on whether the conduct was based on public policy considerations.  Id. at 322-23.  See also Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000).

Federal law requires the Bureau of Prisons to provide for the "protection" and "safekeeping" of all inmates in its care. 18 U.S.C. § 4042(a)(2), (3).  Federal regulation, see 28 C.F.R. § 541.22, and Bureau of Prisons Program Statement 5270.07 specifically provide that inmates may be housed in administrative segregation while they await a hearing before the Unit Discipline

---

FTCA's waiver of sovereign immunity does not apply to claims arising out of "libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h).

19

Committee or Discipline Hearing Officer.  In this context, "Administrative detention status is a non-punitive status in which restricted conditions of confinement are required only to ensure the safety of inmates or others, the protection of property, or the security or orderly running of the institution." P.S. 5270.07, Ch. 9, P. 1.  The decision to place an inmate in administrative detention may be made by the Warden or may be delegated.  28 C.F.R. 541.22(a) ; P.S. 5270.07, Ch. 9.

Clearly, the decision to house an inmate in administrative segregation while awaiting a disciplinary hearing involves an element of judgment or choice and involves the permissible exercise of policy judgment.  The discretionary function exception applies.  Cf. Donaldson v. United States, 281 Fed.Appx. 75, 2008 WL 2232665 (3d Cir. 2008) (discretionary function exception applies to decision not to place inmate in Special Housing Unit for his own protection); Castillo v. United States, 166 Fed.Appx. 587, 2006 WL 45554 (3d Cir. 2006) (officials' actions in forcing prisoner and others to meet rival gang members fell within discretionary function exception to FTCA); Boulware v. Parker, 457 F.2d 450 (3d Cir. 1972) (discretionary function exception bars liability for warden's actions in segregating prisoner following a violent incident).

Finally, the FTCA precludes a convicted felon's action for mental and emotional injuries, the only type of injuries

Plaintiff here alleges, without a prior showing of physical
injury.  See 28 U.S.C. § 1346(b)(2).  See also 42 U.S.C.
§ 1997e(e) ("No Federal civil action may be brought by a prisoner
confined in a jail, prison, or other correctional facility, for
mental or emotional injury suffered while in custody without a
prior showing of physical injury.").  In the absence of an
allegation of physical injury, Plaintiff's claim for "stress" or
other mental or emotional injury must be dismissed with
prejudice.  See Michtavi v. United States, 2009 WL 578535, *4-5
(M.D. Pa. March 4, 2009).

IV.  CONCLUSION

For the reasons set forth above, the Complaint must be
dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1), and 42 U.S.C. § 1997e(e), for failure to state a
claim.[6]  If Plaintiff believes he can supplement his pleading
with facts sufficient to state a claim, he may move to re-open

---

[6] The Court notes that "'[g]enerally, an order which
dismisses a complaint without prejudice is neither final nor
appealable because the deficiency may be corrected by the
plaintiff without affecting the cause of action.' ...  The
dispositive inquiry is whether the district court's order finally
resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d
Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951
(3d Cir. 1976)) (other citations omitted).  In this case, if
Plaintiff can correct the deficiencies of his Complaint, he may
file a motion to re-open these claims in accordance with the
court rules.

this action and file an amended complaint.[7]  An appropriate order follows.


At Camden, New Jersey          /s/ NOEL L. HILLMAN
                               Noel L. Hillman
                               United States District Judge

Dated: July 22, 2009

---

[7] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.